[Sac. No. 5488. In Bank. Jan. 13, 1942.]

FRED RAVIZZA, Appellant, v. BUDD & QUINN, INC. (a Corporation), Respondent.

Nathan G. Gray for Appellant.

Adams & Griswold, Claude H. Adams and Hugh H. Griswold for Respondent.

CARTER, J.—On January 10, 1935, defendant, as seller, and John Mogliotti, as buyer, entered into a conditional sale

contract for the sale of a tractor and disc. The purchase price was payable in installments, which were evidenced by promissory notes; the buyer also promised to pay the installments specified in the contract, and it was agreed therein that the acceptance of the notes did not constitute payment of the purchase price. The defendant was to retain title until the payments were made in full. There was a provision against transfer of the contract or the property by the buyer. The defendant's rights, in event of the buyer's default, were set forth as follows:

"First: It (defendant) may without notice elect to treat the entire remaining balance of the purchase price and interest, evidenced by said promissory notes due and payable immediately and sue therefor; or,

"Second: It may without demand or performance or notice, retake possession of said property and may, at public or private sale, with or without notice, with or without having the property at the place of sale, and upon such terms and in such manner as it may determine, sell the said property (seller being permitted to bid at any public sale) and after deducting all expenses (including reasonable attorney's fees) incurred, therein credit the net proceeds of the sale to the unpaid balance due hereunder; any surplus shall be paid to buyer; and buyer agrees to pay to seller any deficiency remaining under this contract or under said promissory notes after such resale is completed and the proceeds applied as herein provided; or

"Third: It may take possession of said property wherever and whenever found, and with or without notice or demand, may elect to treat buyer in default, and in such event, all of the rights, titles and equities of buyer in said property shall immediately cease and determine, and seller shall be released from all obligations to transfer or deliver said property to the buyer, and all sums of money theretofore paid, and all sums then due and unpaid by the buyer to seller hereunder or under said promissory notes shall remain the property of seller and shall be considered compensation for the use, wear and tear and depreciation of said property, and buyer agrees forthwith to pay to seller all of said payments which are then due and unpaid; or

"Fourth: It may avail itself of any of the remedies for the enforcement of a seller's rights under an agreement such as this, as provided by the laws of the State of CALIFORNIA."

The last installment fell due on December 15, 1936. The

amount unpaid on February 11, 1936, including interest was $1,240.87, at which time defendant for a consideration of $1,240.87, assigned to plaintiff the contract and notes and all its right, title and interest in and to the property, the subject of the contract. Plaintiff made several unsuccessful efforts to obtain payment from the buyer, but never demanded or attempted to repossess the property. On December 13, 1939, plaintiff commenced an action on the notes against the buyer through one Abel, an assignee for collection, to recover the purchase price. In that action he had a writ of attachment levied on a tractor which he thought was the subject of the contract, but which he ascertained from a third party claim filed by defendant, was not the tractor covered by the contract, but was a tractor which defendant had sold to the buyer subsequent to the execution and assignment of the conditional sale contract here involved. He then also discovered for the first time that in February of 1939, the buyer had transferred the property, the subject of the contract, to defendant who took it at a value of $575 as a trade-in on new equipment, and defendant then sold it to a third party. Plaintiff's assignee recovered judgment against the buyer in the above-mentioned action on June 18, 1940; a stipulation was filed in that action in which plaintiff agreed that the amount of any judgment obtained against defendant in this action would be credited against any judgment obtained against the buyer. The instant action was commenced on March 4, 1940, to recover damages against defendant in the sum of $575 for the conversion of the property which was the subject of the contract. Although the foregoing facts are undisputed, the trial court rendered judgment for defendant, apparently on the theory as evinced by its finding that "plaintiff did, prior to the bringing of this action, exercise one of its (his) options which it (he) was entitled to exercise under the terms of said contract, and did . . . irrevocably elect to enforce payment of the purchase money . . . and did . . . irrevocably waive its (his) option to repossess itself (himself) of such personal property."

Respondent relies upon its contention that a seller, under a conditional sale contract, upon default of the buyer, may by his conduct with respect to the payment of the purchase price, elect to pursue one of two inconsistent remedies, that is, the recovery of the purchase price rather than the recovery of the possession of the property, which debars him from recovering the property or maintaining any action the basis of which is a

special or general proprietary interest in the property; and that plaintiff's action for conversion is one in which recovery is dependent on a special or general proprietary interest in the property for the conversion of which damages are sought.

It has been often stated by the courts of this state that in the ordinary conditional sale contract under which the seller has the right to repossess the property or to recover the purchase price therefor, upon the buyer's default, certain conduct on the former's part will constitute an irrevocable election by him to pursue his remedy for the purchase price to the exclusion of his right to repossession, and that such election results in the passage of the seller's retained title to the buyer. (*Smith* v. *Miller,* 5 Cal. App. (2d) 564 [43 Pac. (2d) 347]; *Martin Music Co.* v. *Robb,* 115 Cal. App. 414 [1 Pac. (2d) 1000]; *Holt Mfg. Co.* v. *Ewing,* 109 Cal. 353 [42 Pac. 435]; *Silverstin* v. *Kohler & Chase,* 181 Cal. 51 [183 Pac. 451, 9 A. L. R. 1177]; *Parke etc. Co.* v. *White River L. Co.,* 101 Cal. 37 [35 Pac. 442]; *Elsom* v. *Moore,* 11 Cal. App. 377 [105 Pac. 271]; *George J. Birkel Co.* v. *Nast,* 20 Cal. App. 651 [129 Pac. 945]; *Muncy* v. *Brain,* 158 Cal. 300 [110 Pac. 945].) The basis for that doctrine is not clearly expressed in the above cited cases. It appears, however, by implication or direct statement therein that it is founded either on the doctrine of estoppel, or is an application of the principle of waiver, or is based on the theory that the two remedies are wholly inconsistent. Most frequently it is merely announced as a principle of law without any discussion of the reasoning upon which it rests, other than to peremptorily state that conduct, such as an action to recover the purchase price, is inconsistent with a reliance on the retained title, and that conduct in the pursuit of one right, bars the other as being an election of remedies. In most instances, if there is an election, it would be more accurately an election of substantive rights rather than an election of remedies. It may well be that the doctrine has been resorted to as a means of protection to purchasers under conditional sales contracts from instances of harsh and unjust results arising out of transactions for the purchase of property under such contracts. But whatever may be the basis of such doctrine, we are convinced that the terms of the specific conditional sale contract involved in a given case are of vital importance in determining whether the doctrine is properly invoked in such case. In other words, the rights and liabilities of the parties to a conditional sale contract are controlled by the terms of the particular contract

involved. (*Goldberg* v. *List,* 11 Cal. (2d)´389 [79 Pac. (2d) 1087, 116 A. L. R. 900].) ■ In the instant ^case, as appears from the above quoted excerpts from the conditional sale contract, it is agreed that title shall not pass from the seller to the buyer until the full purchase price is paid, and the seller in the interim reserves absolute title. The contract stipulates that at the seller's option, the buyer shall be deemed to be in default if he fails to perform any of the terms of the contract as therein specified, the property is levied upon or seized, the bankruptcy or insolvency of the buyer, or if the seller deems the property or its interest therein insecure. The seller may in event of default, at its option, treat the entire remaining balance of the purchase price payable immediately and sue therefor, or retake possession of the property and may sell the same, crediting the proceeds to the unpaid purchase price, and giving the balance, if any, to the buyer, and recover any deficiency from the buyer, or take possession of the property and all rights of the buyer shall cease and the buyer shall pay all sums then unpaid, or it may pursue any of the remedies available under the laws of this state. It would appear that under those provisions standing alone and the authorities heretofore cited, the so-called doctrine of election would operate to pass title to the buyer if_ the seller commenced an action to recover the purchase price. However, there is a provision in the instant contract by which such an election is expressly negatived. The clause reads: ''Neither the loss of, injury to, or destruction of, said property, nor renewals or extensions of this contract, or of any of said promissory notes, *nor institution of suit or procurement of judgment thereon,* nor the hypothecation, assignment or discounting of this contract together with any of said promissory notes, *shall operate* as payment, or *as a transfer of title to buyer* or in any manner to release him from any obligation hereunder.'' (Emphasis added.) Under the circumstances of this case, that provision is controlling and defendant cannot successfully claim a lack of title or property right in plaintiff by reason of the doctrine of election which might ordinarily arise from the plaintiff having commenced action for and obtained judgment against the buyer for the purchase price. Effect must be given to all of the terms of the contract. (See *Bolinger* v. *National Cash Register Co.,* 52 Ohio App. 217 [3 N. E. (2d) 640]; *Murray* v. *McDonald,* 203 Iowa 418 [212 N. W. 711, 56 A. L. R. 233].) ■ Defendant asserts that the last quoted provision is modified by another

provision in the contract that the seller may pursue *any* of the remedies set forth, with the disjunctive ''or'' appearing between the statement of the various remedies available. That is manifestly untenable. That provision does not necessarily imply that the seller is limited to the exercise of only one of those remedies. Further, even if it might be said that those terms of the contract might possibly be susceptible of such an implied construction standing alone, the contract must be read in its entirety, and the express provision last above quoted to the contrary forestalls any such interpretation. To hold otherwise would have the effect of rendering said last quoted provision meaningless.

It is not our intention to hold that there may not be circumstances under which the seller is estopped to rely upon a conditional sale contract clause similar to the one in the instant case or that under which he is deemed to have waived it. The estoppel would be equitable, or estoppel in fact, with the necessity of the presence of the essential elements thereof. The waiver would be of the nature common in the law and based on fact rather than a presumed basis for a certain result. Also it is obvious that a seller is not entitled to a double recovery or more than that to which he is entitled under his contract; if he is paid in full or obtains a judgment for the purchase price which is satisfied, then the contract having been completely performed by the buyer, title passes to the latter. There is no element of double recovery in this case as the plaintiff's judgment against the buyer is unsatisfied. Further he has agreed that any amount he may recover from defendant may be credited on his judgment against the buyer.

Defendant cannot rely upon estoppel or claim a waiver of the last above quoted clause in the contract here involved for the reason that at the time plaintiff's assignee commenced the action against the buyer to recover the purchase price, plaintiff did not know that the latter had transferred the property to defendant. He supposed the buyer still had possession of the property. It is true that before obtaining judgment in that action he had such knowledge, but by the terms of the contract, it was agreed that procuring a judgment was not an election and did not pass title to the buyer. Assuming, but not deciding, that the attachment in such an action would ordinarily constitute a waiver, it was not such under the circumstances of this case, inasmuch as the property, the subject of contract here involved, was not attached

in that action. Although plaintiff thought he was attaching that property, the fact remains that he did not do so. He did not do any act which was in fact contrary to his right to rely on his reserved title, or which was to the detriment or disadvantage of defendant.

 Defendant directs our attention to the circumstance that plaintiff, prior to the commencement of his action to recover the purchase price, made repeated demands upon the buyer for the purchase price, but did not demand a return of the property. That could not constitute an estoppel or waiver as to defendant. Furthermore, there are no facts in this case upon which an estoppel may be predicated in favor of defendant. It must be remembered that defendant was the original seller in the conditional sale contract which it assigned to plaintiff. It therefore knew all of its terms and that the title to the property was retained first by it, and then by the plaintiff by virtue of the assignment, and that the commencement of the action and obtaining judgment would not pass title. Plaintiff did not make any representations to defendant, or assume or cause to exist any misleading appearances upon which defendant justifiably relied to its injury. There could be no waiver as to any rights as against defendant when plaintiff had no dealings with it after the assignment of the conditional sale contract and was ignorant of the transfer of the property by the buyer to defendant. In connection with the above proposition asserted by defendant, it cites the case of *Smith* v. *Miller, supra,* in support of its contention that a series of circumstances, such as delay in taking action after default, coupled with a continuous demand for the purchase price without mentioning the return of the property, would constitute an election. It is to be noted that in that case the buyer's offer to return the property had been rejected by the seller; that factor is not present in this case. In any event the court in the Smith case was not considering the effect of the special clause with respect to election which exists in this case. When the election is specifically negatived, even if suit is brought and judgment obtained, certainly mere delay in enforcing his rights together with demands for the purchase price, does not create a waiver of that specific provision.

 It cannot be said that the notes which were given as evidence of the installment payments under the conditional sale contract were given as payment, and therefore title passed to the buyer. As above mentioned, the contract specifically

provided that the notes were not payment. Nor did the assignment of the notes by defendant to plaintiff constitute a waiver of the reservation of title. The assignment by its terms included not only the notes and contract, but also the reserved title. The assignment by plaintiff to Abel was merely for collection by suit thereon, it not being intended that he acquire any beneficial interest therein. Such a transfer certainly would not constitute a waiver of the reserved title under the circumstances in this case. Furthermore, it is to be noted that the heretofore quoted provision in the contract negativing a waiver or election, specifies that an assignment of the notes or contract shall not transfer title to the buyer.

The title being at all times retained by the plaintiff, it necessarily follows that defendant's conduct in selling the property constituted a conversion thereof for which it is liable.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Houser, J., and Traynor, J., concurred.

Respondent's petition for a rehearing was denied February 11, 1942.